# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEONCE J. MILLER, III** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 08-3788** |
| **MICHAEL F. BLATTNER, ET AL.** | **SECTION "L" (1)** |

## ORDER & REASONS

Before the Court is a Motion for Partial Summary Judgment filed by the Plaintiff (Rec. Doc. 62), a Motion for Summary Judgment filed by Defendants Allpax Products, LLC and Pro Mach, Inc. (Rec. Doc. 67), a Motion for Summary Judgment filed by Defendants Michael F. Blattner and Steven B. Hudson (Rec. Doc. 68), and a Motion for Summary Judgment to Dismiss the Counterclaim of Allpax Products, LLC filed by the Plaintiff (Rec. Doc. 93). For the following reasons, the Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 62) is now DENIED, the Motion for Summary Judgment filed by Defendants Allpax Products, LLC and Pro Mach, Inc. (Rec. Doc. 67) is now GRANTED IN PART AND DENIED IN PART, the Motion for Summary Judgment filed by Defendants Michael F. Blattner and Steven B. Hudson (Rec. Doc. 68) is now GRANTED IN PART AND DENIED IN PART, and the Motion for Summary Judgment to Dismiss the Counterclaim of Allpax Products, LLC filed by the Plaintiff (Rec. Doc. 93) is now DENIED.

## I.    BACKGROUND

This dispute centers around the payment of a bonus allegedly owed to plaintiff Leonce J. Miller III ("Miller"). Miller was hired to be a staff engineer by Defendant Allpax Products, LLC

("Allpax") in November of 2003.  At the time, Allpax was owned by Defendants Michael F.

Blattner ("Blattner") and Steven B. Hudson ("Hudson").  In May of 2006, Defendant Pro Mach,

Inc. ("Pro Mach") agreed to purchase Allpax and all of its assets and liabilities from Blattner and

Hudson pursuant to a Stock Purchase Agreement ("SPA").  Under the SPA, Blattner and Hudson

were to receive a fixed amount of money plus an additional $5,000,000 in the event that Allpax

achieved a specified cumulative earnings for the 2006 and 2007 calendar years.  Additionally, if

these earnings levels were achieved, Pro Mach expressly agreed to distribute up to $500,000 to

members of the Allpax management team, including Miller.  Miller's portion of this bonus

totaled approximately $55,000.  The SPA provided that this bonus would be "deemed

compensation for services."  Miller learned of this bonus in a subsequent letter dated May 19,

2006, from Hudson.  The signature line read "Stephen B. Hudon, President[,] Allpax Products,

Inc."  The parties do not dispute that Miller was eventually paid this bonus.

Subsequent to the consummation of the SPA, Miller, who had already been employed by

Allpax since 2003, entered into an employment agreement with Allpax.  Around the same time,

Miller was informed that Blattner and Hudson were offering a discretionary bonus to five

members of the Allpax management team, including Miller, in the event that the earnings goals

were met.  These bonuses were to be paid out of a $1 million pool with the specific amounts of

any bonuses awarded to be determined by Blattner and Hudson, and were entirely distinct from

the aforementioned bonus provided for by the SPA.  Miller was informed that if the $1 million

pool was split evenly, he would receive $200,000.

Ultimately, Allpax met their cumulative earnings goal.  However, instead of paying

Miller a bonus of $200,000, Blattner and Hudson exercised their discretion and offered him

$80,000.  They made the payment of this bonus conditional upon the execution of a full release of liability for Blattner and Hudson.  Miller then asked to meet with Blattner and Hudson to discuss the amount of his bonus.  Blattner and Hudson declined this meeting and when Miller refused to sign this release, they withdrew their offer.

On March 10, 2008, Miller submitted a written resignation to Allpax after securing employment elsewhere.  Upon his departure, Miller took several emails from Allpax customers which included contact information.  In addition Miller took a letter addressed to Greg Jacobs, Allpax's General Manager, from Allpax's attorneys.  Miller had been copied on the letter, which contained patent application materials for something that he had invented.  Miller asserts that this letter was taken accidentally as he cleaned out his office.

On June 24, 2008, Miller initiated the instant lawsuit.  In his complaint, Plaintiff asserts a variety of state law claims including a claim under the Louisiana Wage Payment Statute ("LWPA"), a claim under Louisiana Civil Code Article 1978 as a third party beneficiary of the agreement, a claim under Louisiana Civil Code Article 2298 for enrichment without cause, a claim under Louisiana Civil Code Article 1967 for detrimental reliance, and a claim for breach of contract.   On March 26, 2009, plaintiff amended his complaint to include claims against Allpax and Pro Mach for negligence, defamation, and invasion of privacy related to the release of his confidential personnel files by Allpax and Pro Mach to Blattner and Hudson.

On March 23, 2009, Allpax filed a counterclaim against Miller asserting that Miller breached his employment agreement by 1) not devoting his best efforts to the performance of his duties; 2) acting in a manner which damaged the goodwill, reputation and business relations of Allpax with its customers and; 3) misappropriating trade secrets.  The counterclaim seeks relief

in the form of an order that Miller return any confidential materials to Allpax, an injunction to prevent the use or disclosure of these materials, and monetary damages including repayment of the $55,000 performance bonus.

## II.  PRESENT MOTIONS

### A.  Miller's Motion for Partial Summary Judgment

First, Plaintiff has filed a motion for partial Summary judgment on his LWPA claims against all Defendants.  Plaintiff argues that Allpax, ProMach, Hudson and Blattner were all Miller's co-employers and that the offered bonus of $80,000 constitutes a wage that should have been offered unconditionally.  Blattner and Hudson have responded and claim that they were not Miller's employer and that the bonus was not a wage.  AllPax and Pro Mach have responded and argue that the bonus was a personal offer made to Miller by Blattner and Hudson and is therefore not a wage owed by Allpax or Pro Mach.

### B.  Allpax and Pro Mach's Motion for Summary Judgment

Second, Allpax and Pro Mach have filed a motion for summary judgment on all of Plaintiff's claims.  In addition to their argument regarding the LWPA, discussed above, Allpax and Pro Mach assert that any salary and bonuses due to Miller were governed exclusively by the terms of his employment contract.  Further, they assert that Miller's third party beneficiary claim fails because the SPA was not intended to benefit Miller.  Additionally, Allpax and Pro Mach claim that Miller cannot establish a claim for detrimental reliance against them because they never promised him the disputed bonus, and he therefore could not have relied on any promise to his detriment.  Regarding Miller's unjust enrichment claim, Allpax and Pro Mach point out that Miller, as an employee of Allpax, was required to work towards meeting the company goals even

absent a performance bonus and that any enrichment could not have been unjust.  Furthermore, they argue that Miller did not suffer any impoverishment because he was compensated for his time at work, and that even if he did, he cannot establish a causal connection to Allpax or Pro Mach because the bonus was promised by Hudson and Blattner.  Next, Allpax and Pro Mach claim that they are entitled to summary judgment on Miller's invasion of privacy claim because any material disclosed was contained on Miller's computer at work and Miller did not have any reasonable expectation of privacy in that material.  They also argue that the material was disclosed only to Blattner and Hudson who were entitled to see the material in order to determine the amount owed to Miller for the disputed bonus.  Finally, Allpax and Pro Mach assert that Miller's defamation claim fails because he has provided no evidence of any false statement, of any malice, or of any injury suffered by Miller as a result.

Miller has responded to this motion and argues that he, not Allpax and Pro Mach, is entitled to summary judgment on his LWPA claim, as discussed above.  Furthermore, he argues that Allpax and Pro Mach agreed to pay him the bonus in addition to any compensation contained in his employment agreement and are therefore contractually obligated to him for the $80,000 bonus.  Additionally, he argues that the SPA was intended to benefit him.  He also claims that he relied on the representations of Allpax and Pro Mach when he accepted their offer of employment and decided to invest substantial personal time to business endeavors.  Next he argues that he did have a reasonable expectation of privacy in material contained on his work computer because company policies regarding computer use were not enforced.  Finally, he claims that statements made by Allpax managers regarding his job performance were defamatory because they were false and led to a denial of his promised compensation.

**C.      Blattner and Hudson's Motion for Summary Judgment**

The third motion currently pending before the Court is a motion for summary judgment on all of Plaintiff's claims filed by Blattner and Hudson. These Defendants argue that they are entitled to summary judgment on the LWPA claims because they were not Miller's employer and the bonus was not a wage. They also argue that they are not contractually obligated to Miller for the bonus because any bonus amount was purely discretionary. Regarding Miller's unjust enrichment claim, Blattner and Hudson argue that the promise of any bonus was discretionary, and it is not reasonable to rely on a discretionary bonus. Further, they point out that he was searching for jobs while working for Allpax and never turned down any jobs in reliance on the discretionary bonus. Finally, Defendants argue that Miller's unjust enrichment claim against them fails because Blattner and Hudson received the agreed upon price for their company and were not enriched. Additionally, they point out that Miller was compensated for his work by Allpax and was therefore not impoverished.

In response, Miller reiterates his argument for summary judgment on the LWPA claim, discussed above. Additionally, he claims that Blattner and Hudson offered a bonus, that they determined that the amount of that bonus was $80,000, and that he accepted the offer and performed on the contract. Regarding his detrimental reliance claim, Miller argues that he accepted Allpax's employment agreement, remained employed, and conducted extensive travel during personal time as a result of his reasonable reliance on the promised bonus. Finally, Miller argues that summary judgment must be denied for his unjust enrichment claim because he was impoverished when he did not receive the promised bonus while Blattner and Hudson were enriched when they were paid the performance bonus by Pro Mach. Because Miller helped

Allpax achieve their performance goal and earn this bonus for Blattner and Hudson, he argues that they have been unjustly enriched.

**D.    Miller's Motion for Summary Judgment to Dismiss Allpax's Counterclaim**

The fourth and final motion currently before the Court is Plaintiff's Motion for Summary Judgment to Dismiss the Counterclaim.  In this motion, Plaintiff argues that he is entitled to summary judgment regarding Allpax's counterclaims for misappropriation of trade secrets and for breach of employment agreement.  He argues that Allpax's misappropriation of trade secrets claim fails because Allpax suffered no actual loss as a result of either Miller's possession of emails from Allpax customers or his possession of the letter containing patent application materials.  Additionally, he argues that Allpax's customer list was not a trade secret and that the letter containing patent application materials was not misappropriated.  Finally, Miller argues that Allpax does not have standing to seek recovery of the $55,000 performance bonus that he received because it was paid by Pro Mach.

In response, Allpax argues that Miller's employment agreement expressly states that customer lists were confidential trade secrets.  In addition, they argue that information regarding the company's intellectual property is clearly confidential and was misappropriated when Miller failed to comply with Allpax's instructions to return all such material prior to his departure.  Finally, Allpax asserts that they have standing to pursue the return of the $55,000 bonus even though Pro Mach's name appeared on the bonus check.  In support of this assertion, they point out that the expense appeared in Allpax's accounting reports and was promised by Allpax.  The Court will deal with these motions in turn.

## III.    LAW & ANALYSIS

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed R. Civ P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact which, under applicable law, may alter the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001).  A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it.  *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).  "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact."  *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 776, 781 (E.D. La. 2007).  When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Boimedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

Additionally, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  *See Anderson*, 477 U.S. at 248.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Id.* at

249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

A. **Plaintiff's Louisiana Wage Payment Statute Claims**

As noted above, all parties to this litigation have moved for summary judgment on the Plaintiff's LWPA claims. Pro Mach, Blattner and Hudson all contend that they are not Miller's "employers" within the contemplation of that statute. Louisiana Revised Statute § 23:631 provides that,

> [u]pon discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

La. Rev. Stat. Ann. § 23:631. Section 23:632 provides for penalties and attorney's fees to be assessed against any employer that fails to timely pay wages within a certain period of time following a demand made by the employee. La. Rev. Stat. Ann. § 23:631.

This Court has previously recognized, in its' Order and Reasons dated March 18, 2009, that "an individual who is obligated by law to pay an employee's salary may be considered an 'employer' for purposes of the LWPA." (Rec. Doc. 34, at 5). However, Miller has not cited to a single case holding that former shareholders of a company can be employers of individuals working for that company. He has presented no evidence that Blattner and Hudson had any control over his work following the sale of the company. Furthermore, he has failed to present

-9-

any evidence that Blattner and Hudson were obligated by law to pay him anything other than what they allegedly contracted for in their personal capacity. Accordingly, Blattner and Hudson were not Miller's employer and the Court must grant them summary judgment on Miller's LWPA claim.

Pro Mach, the parent company of Allpax, never entered into any type of employment agreement with Miller. Miller has not moved for summary judgment on his LWPA claim against Pro Mach. Furthermore, Miller has not presented any evidence which would indicate that Pro Mach was Miller's employer, and accordingly, summary judgment in Pro Mach's favor is granted on the LWPA claim.

There is no doubt that Allpax was Miller's employer. Nevertheless, Allpax argues that they are entitled to summary judgment on Miller's LWPA claim. Specifically, they argue that a bonus cannot constitute "wages" and even if it can, they claim that the bonus allegedly due to the Plaintiff was promised only by Blattner and Hudson and was therefore not due under the terms of Miller's employment with Allpax. This Court has previously recognized that "whether a bonus constitutes wages for purposes of [the LWPA] is an unsettled issue in Louisiana courts and is a mixed question of law and fact." *See Barrios v. Kody Marine, Inc.*, No. 99-1623, 2000 WL 422392, *2 n.3 (E.D. La. Apr. 17, 2000) (comparing cases). Where a payment was not made regularly and was not included in any employment agreement, Louisiana courts have concluded that the payments are not wages. *See Rutledge v. CRC Holston, Inc.*, 425 So. 2d 364, 366 (La. Ct. App. 1982) (holding that additional payments sometimes made to employees who handled a dangerous substance were not wages where the payments were not provided for in the employment agreement and the plaintiff presented no evidence to show that the payments had

been bargained for as a condition of employment at the time of hiring). Furthermore, some courts have refused to recognize wages when a payment is not daily, hourly, weekly or monthly. *See Dore v. WHC Lease Service, Inc.*, 528 So. 2d 235, 239 (La. Ct. App. 1988) (holding that an annual bonus was not a wage even though it was a term of employment because it was not payable "by the day, the hour, the week, or the month."). Nevertheless, bonuses have been considered wages in certain situations. *See Messina v. Lowe's Home Centers, Inc.*, No. 07-1214, 2007 WL 1870170, at *2-3 (E.D. La. June 26, 2007) (holding that an annual bonus provided for in the employment contract was a wage under Louisiana law); *Williams v. Dolgencorp, Inc.*, 04-139, p. 5-6 (La. App. 2 Cir. 9/29/04); 888 So. 2d 260, 263-64 (holding that "the bonus to which the appellee is entitled is considered 'wages' due under the terms of her employment."); *Thomas v. Orleans Private Industry Council, Inc.*, 95-1577 (La. App. 4 Cir. 2/15/96); 669 So. 2d 1275, 1279-1280 (holding that a verbally agreed upon bonus constituted wages even though it was payable annually because it "clearly represent[ed] remuneration for services rendered under a pay period."). Considering the case law, it is apparent that a promised bonus can constitute wages even if it is not expressly included in an employment contract if the bonus is remuneration for services rendered and has been negotiated and relied on by the employee.

In this case, the Plaintiff has presented at least some evidence that this bonus was offered to him by Allpax, at the time he entered into his employment agreement, in remuneration for services rendered in achieving certain performance goals. Although the bonus was offered by Blattner and Hudson at their discretion if the target was met, all communications regarding the bonus were apparently conducted through Allpax employees, including Miller's supervisor. Furthermore, Plaintiff has produced an email from Miller's supervisor in which he said "[k]eep

in mind that [the bonus] would be added to your salary/bonus earnings that are in place for 2006 and 2007." This email was signed by "Greg Jacob, General Manager, Allpax Products, Inc." Thus, there is clearly a question of fact regarding whether Allpax, through the communications of their employees regarding the bonus, became bound by the offer of the bonus. Additionally, there is a factual question regarding whether the bonus became a term of employment or was merely a gratuitous promise. Accordingly, summary judgment on Miller's LWPA claim against Allpax is inappropriate.

> **B.      Plaintiff's Breach of Contract Claims**

Each of the Defendants next argue that they are entitled to summary judgment on Plaintiff's claims for breach of contract. The Louisiana Civil Code provides that "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. art. 1906. As the United States Court of Appeals, applying Louisiana law, has explained, "[f]our elements are required for a valid contract: (1) the parties must possess the capacity to contract; (2) the parties mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 430 n.4 (5th Cir. 1996) (citing *Keller v. Sisters of Charity*, 597 So. 2d 1113, 1115 (La. Ct. App. 1992); La. Civ. Code. Ann. arts. 1918, 1927, 1966, 1977).

In this case, Blattner and Hudson argue that summary judgment is appropriate because the promised bonus was discretionary and was therefore too indefinite to define the parties obligations under the contract. In support of their argument, they cite to *Ashker v. Horizon Offshore Contractors, Inc.*, Case No. 99-1367, 2000 WL 516377, at *4 (E.D. La. 2000). In

*Ashker*, a salesman alleged that he had been verbally promised a discretionary bonus in the event that certain sales goals were reached. *Id.* The plaintiff filed suit alleging breach of contract when he did not receive the bonus. *Id.* at *1. The Court rejected his claim and reasoned that because "the alleged terms of the promise [were] too indefinite . . . a factfinder would be left to speculation and guessing to quantify what if anything was owed to Plaintiff." *Id.* at *4.

The situation in the instant case is distinguishable from *Askher* in several ways. First, in *Ashker*, the discretionary bonus amount was never set but instead always remained illusory. In this case, however, Plaintiff has presented a "Receipt and Release" which provided that "Blattner and Hudson have determined to pay to [Miller] the total amount of <u>Eighty Thousand</u> and No/100ths Dollars (<u>$80,000.00</u>) of the bonus pool." Furthermore, in *Ashker*, the alleged promise was entirely undocumented and the court determined that it was nothing more than a statement regarding a bonus pool that might be created. *Id.* Less that a week later, the promisor issued a memorandum indicating that he was considering the creation of a bonus pool that was much smaller than that which was alleged. *Id.* In this case, it is not contested that a bonus pool was in fact created. Thus, factual questions remain regarding whether a binding contract was created, and accordingly summary judgment must be denied on Miller's contract claim against Blattner and Hudson.

Allpax and Pro Mach have also moved for summary judgment on Miller's contract claim arguing that the terms of Miller's employment were exclusively contained in his Employment Agreement and that the alleged bonus was not promised by either Allpax or Pro Mach. However, the existence of an employment agreement does not preclude Allpax or Pro Mach from entering into an additional contract. Furthermore, as discussed above, Plaintiff has

presented sufficient evidence to raise a factual question regarding the relationships between Allpax and Pro Mach and the individuals who were communicating information to Miller about the bonus. If these individuals, who were employed by Allpax, were acting on behalf of Allpax and/or Pro Mach, then a factual issue exists as to whether these defendants were bound by any promises that were made. Therefore, summary judgment on Miller's contract claims against Allpax and Pro Mach is denied.

### C.    Plaintiff's Detrimental Reliance Claim

The Defendants also argue that they are entitled to summary judgment regarding the Plaintiff's claim for detrimental reliance. Specifically, the Defendants take the position that the Plaintiff cannot demonstrate a detrimental change in his position in reliance on the Defendants' alleged promise. They also argue that any reliance by Plaintiff on a purely discretionary bonus amount would have been unreasonable. Because the Plaintiff entered into a two-year work contract, the Defendants contend that he was merely continuing to do what he was already legally obligated to do by the terms of his employment agreement. In response, the Plaintiff argues that he entered into the two-year contract in the first place precisely because he had the opportunity to earn a substantial bonus. They further argue that he invested significant personal time on business travel in order to achieve the target earnings and receive the discretionary bonus.

Louisiana law defines claims for detrimental reliance in Louisiana Civil Code article 1967, which provides that:

> [a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the

> promise. Reliance on a gratuitous promise made without required formalities is not
> reasonable.

La. Civ. Code art. 1967. In order to invoke the doctrine of detrimental reliance, the claimant

must establish three elements: (1) a representation by word or conduct; (2) justifiable/reasonable

reliance on that representation; and (3) a change in position to one's detriment because of the

reliance. *See Lakeland Anesthesia v. United Healthcare of La.*, 03-162 (La. App. 4 Cir.

3/17/04); 871 So. 2d 380, 393.

At this stage of the proceedings, Plaintiff has produced no evidence that he was harmed

at all by relying on any alleged promise and entering into an employment agreement with Allpax

other than his own conclusory allegations. He has presented no evidence that he turned down

other job opportunities or that he would have turned down the employment agreement absent the

bonus. Moreover, the Defendants have presented evidence that Miller was searching for other

employment on company time while employed at Allpax. Once he found another job, he

tendered his resignation to Allpax. Additionally, the fact that Miller engaged in business travel

while employed at Allpax is not material. He was compensated for this travel under the

employment agreement. Thus, the Court will grant summary judgment to the Defendants on

Miller's claim for detrimental reliance.

**D.     Plaintiff's Unjust Enrichment Claims**

Next, the Defendants argue that the Court should grant summary judgment on Plaintiff's

claims for unjust enrichment because the Defendants could not have been unjustly enriched by

withholding the "bonus," as they were never obligated to pay the Plaintiff any bonus in the first

place. Louisiana Civil Code article 2298 states:

> A person who has been enriched without cause at the expense of another person is

> bound to compensate that person. The term "without cause" is used in this context
> to exclude cases in which the enrichment results from a valid juridical act or the law.
> The remedy declared here is subsidiary and shall not be available if the law provides
> another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code. art. 2298.

As an initial matter, the statute clearly provides that claims for unjust enrichment "shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code Ann. art. 2298. As discussed throughout this Order, the Plaintiff has the availability of alternative remedies. Ultimately, "it is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 07-1497, p. 10-11 (La. App. 3 Cir. 4/2/08); 981 So. 2d 92, 100. Accordingly, Plaintiff's unjust enrichment claims are all precluded and summary judgment must be granted.

Even if Plaintiff's claims were not statutorily precluded, he has failed to offer sufficient proof to defeat the summary judgment motions regarding his unjust enrichment claims as to any of the four Defendants. There is no evidence that the Defendants were unjustly enriched. Blattner and Hudson received the amount promised to them in the SPA and no more. Allpax and Pro Mach received the benefit of Miller's work as their employee and nothing more. Furthermore, there is no evidence that Miller was impoverished. He was paid for the work that he performed pursuant to his employment agreement. In addition, either Allpax or Pro Mach paid him a $55,000 bonus for his efforts in achieving the relevant performance goals. Accordingly, the Court will grant the Defendants' motions for summary judgment regarding Plaintiff's unjust enrichment claims.

### E.    Plaintiff's Third-Party Beneficiary Claims

Plaintiff also asserts a claim against Allpax and Pro Mach as a third party beneficiary of the stock purchase agreement pursuant to Louisiana Civil Code article 1978.  Article 1978 provides that:

> [a] contracting party may stipulate a benefit for a third person called a third party beneficiary.  Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

La. Civ. Code art. 1978.  Furthermore, [i]n determining whether such a condition or consideration exists, the courts have developed . . . a dogma that the existence of a stipulation depends upon the intention to create it."  *C.H. Leavell & Co. v. Glantz Contracting Corp. Of La.*, 322 F. Supp. 779, 784 (E.D. La. 1971).  In this case, Plaintiff has presented no evidence that Allpax or Pro Mach intended the SPA to convey a benefit to Miller.  He points to an email from Greg Jacob and to the Receipt and Release, both of which provide evidence that some collateral promise was made to him.  However, neither of these documents contains any indication that this promised benefit was included as part of the SPA.  Furthermore, there is no mention within the SPA of a benefit intended for Mr. Miller.  Instead, the SPA expressly disavows any such contention when it states that "[n]othing herein shall be construed to be to the benefit of any third party, nor is it intended that any provision shall be for the benefit of any third party."  Thus, it is clear from the language of the SPA that the parties did not intend a benefit to be conferred to Miller by the SPA.  Therefore, summary judgment must be granted Miller's claims as a third party beneficiary.

### F.    Plaintiff's Invasion of Privacy Claims

Allpax and Pro Mach have also moved for summary judgment on Plaintiff's claims for

invasion of privacy.  These claims arise out of the disclosure of emails located on Miller's work computer to Blattner and Hudson.  Defendants claim that this disclosure occurred to facilitate Blattner and Hudson's investigation for the purpose of determining the appropriate amount of Miller's bonus.  They also argue that Miller did not have a reasonable expectation of privacy in these documents.  Under Louisiana law, "[t]he right of privacy protects varied interests from invasion.  Among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs."  *Parish Nat'l Bank v. Lane*, 397 So. 2d 1282, 1286 (La. 1981).  However, this right is not absolute.  It "may be lost . . . by express or implied waiver or consent, or by a course of conduct which prevents its assertion." *Id.*

In this case, Allpax had an express policy which provided that all emails, personal or professional, that were contained on Allpax computers were the property of Allpax.  Thus, Miller could not have had a reasonable expectation over these documents.  Miller argues that the Allpax policy was not generally enforced and that his subjective expectation of privacy was therefore reasonable.  However, this fact is not material.  Where, as here, an employer has a rule prohibiting personal computer use and a published policy that emails on Allpax's computers were the property of Allpax, an employee cannot reasonably expect privacy in their prohibited communications.  Moreover, Miller had agreed to participate in the bonus pool.  The amount of his bonus was left to the discretion of Blattner and Hudson, who would presumably calculate Miller's bonus amount based on his work performance.  The contents of Miller's emails is directly relevant to his work performance, and he therefore waived any privacy right he might otherwise have had in his work emails.  Accordingly, summary judgment will be granted in favor

of Allpax and Pro Mach on Miller's invasion of privacy claims.

### G. Plaintiff's Defamation Claims

Plaintiff has also asserted claims for defamation against Allpax and Pro Mach for statements made by these Defendants and their employees to Blattner and Hudson as they attempted to calculate Miller's bonus amount, including performance reviews by Allpax employees. Allpax and Pro Mach have moved for summary judgment on these claims. Under Louisiana law, the elements of a successful defamation claim are: 1) defamatory words; 2) publication; 3) falsity; 4) malice; and 5) resulting injury. *Kosmitis v. Bailey*, No. 28585, p. 2 (La. App. 2 Cir. 12/20/96); 685 So. 2d 1177, 1179. In this case, Plaintiff's have presented no evidence that the performance reviews given to Blattner and Hudson by Allpax employees were false or that they were given with malice. These performance reviews were the opinions of Miller's coworkers and were based on their subjective beliefs. While Plaintiff has presented emails from other employees that contradict any negative reviews, he has failed to provide any reason to believe that the negative reviews were false or malicious. Accordingly, Allpax and Pro Mach are entitled to summary judgment on Miller's defamation claims.

### H. Allpax's Counterclaims

Finally, Plaintiff seeks summary judgment on Allpax's counterclaims for misappropriation of trade secrets and for breach of his employment agreement. Allpax has alleged that Plaintiff breached his employment agreement by searching for a job on company time while still an employee of Allpax. Further, they allege that Plaintiff's continuing possession of personal emails from Allpax customers and information about certain intellectual property belonging to Allpax constitutes a misappropriation of trade secrets. The Court will

consider Plaintiff's arguments on each counterclaim separately.

## 1.     Misappropriation of Trade Secrets

Louisiana law protects against the misappropriation of trade secrets. *See* Louisiana Uniform Trade Secrets Act, La. Rev. Stat. Ann. §§ 51:1431-39 (2003). Under the Louisiana Uniform Trade Secrets Act, damages are recoverable where a plaintiff can prove that (1) the materials in question constitute a protected trade secret; (2) the trade secret was misappropriated; and (3) the misappropriation caused an actual loss. *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000). Even if there is no actual loss, the statute provides for injunctive relief to prevent "actual or threatened misappropriation." La. Rev. Stat. Ann. § 51:1432; *see also Newsouth Commc'ns Corp. v. Universal Telephone Co.*, Case No. 02-2722, 2002 WL 31246558, at * 21 (E.D. La. Oct. 4, 2002). Also, according to the statute, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

La. Rev. Stat. Ann. § 51:1431(4). "Misappropriation" is defined as:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (aa) derived from or through a person who had utilized improper means to acquire it; (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by

accident or mistake.

La. Rev. Stat. Ann. § 51:1431(2). Finally, "'[i]mproper means' includes theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." La. Rev. Stat. Ann. § 51:1431(2).

First, Miller argues that Allpax cannot prove that the customer emails constitute protected trade secrets. Additionally, Miller argues that Allpax cannot prove that the information regarding Allpax's intellectual property was acquired through improper means. The resolution of these issues will ultimately require factual determinations. Allpax has presented evidence that Miller's employment agreement expressly designated customer lists as confidential. Furthermore, evidence has been presented by both sides regarding Allpax's efforts to maintain confidentiality. Thus, whether the customer lists are protected trade secrets is a factual issue. Regarding the patent application materials, Miller claims that the information was accidentally taken upon his departure from Allpax. However, the circumstances surrounding Miller's acquisition of the patent application remain unclear and significant factual questions remain regarding whether the materials were misappropriated.

Plaintiff also argues that he is entitled to summary judgment on Allpax's claim for misappropriation of trade secrets. In support of this argument, Miller asserts that Allpax has offered no proof of actual loss. Allpax does not seem to seriously dispute this contention, pointing out only that Plaintiff has never said that he did not use the information. Representatives of Allpax have admitted at deposition that they have no evidence of actual loss. However, this argument is relevant only to whether or not

Allpax is entitled to damages for misappropriation. Actual loss is not required in order for injunctive relief to issue. Thus, while Allpax cannot recover damages because they have not presented evidence of actual loss, summary judgment on Allpax's missapropriation of trade secrets claim is inappropriate.

### 1. Breach of Employment Agreement

Miller next argues that he is entitled so summary judgment on Allpax's claim for breach of employment agreement because Allpax does not have standing to seek the return of the $55,000 bonus that Miller received. According to Miller, this bonus was paid by Pro Mach. Although the bonus check has Pro Mach's logo on it, factual issues remain regarding the source of the payment. Allpax has presented evidence that the money came out of an Allpax account and was included in Allpax's accounting. Furthermore, the SPA itself specifies that the bonus was "deemed compensation for services." Miller learned of this bonus in a subsequent letter dated May 19, 2006, from Hudson. The signature line read "Stephen B. Hudon, President[,] Allpax Products, Inc." The letter also explained that "[i]n the event that Allpax achieves all or part of the Earnout target EBITDA, *Allpax would pay to you* an amount equal to one-ninth (1/9) of the Management Earnout." Thus, factual issues remain regarding the payment of this bonus and summary judgment is therefore inappropriate.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 62) is DENIED, the Motion for Summary Judgment filed by Defendants Allpax Products, LLC and Pro Mach, Inc. (Rec. Doc. 67) is GRANTED

IN PART AND DENIED IN PART, the Motion for Summary Judgment filed by

Defendants Michael F. Blattner and Steven B. Hudson (Rec. Doc. 68) is GRANTED IN

PART AND DENIED IN PART, and the Motion for Summary Judgment to Dismiss the

Counterclaim of Allpax Products, LLC filed by the Plaintiff (Rec. Doc. 93) is DENIED.

New Orleans, Louisiana, this 11th day of December, 2009.

_____

UNITED STATES DISTRICT JUDGE